612 S.E.2d 362 (2005)
In the Matter of S.D.A., R.G.A., V.P.M., and J.L.M., Minor Children.
No. COA04-54.
Court of Appeals of North Carolina.
May 17, 2005.
Dameron Burgin & Parker, P.A., by Phillip T. Jackson, Marion; and Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., by Eric M. Lieberman, David B. Goldstein, and *363 Roger Bearden, New York City, pro hac vice, for intervenor-appellants.
Marshall & Roth, P.L.L.C., by Philip J. Roth, Asheville, for S.D.A. and R.G.A.
Hamrick, Bowen, Mebane, Greenway & Lloyd, LLP, by Bradley K. Greenway, Rutherfordton, for Rutherford County Department of Social Services.[1]
Smathers & Norwood, by E. Robert Hensley, Jr., Canton, for the mother.[2]
WYNN, Judge.
It is axiomatic that a trial court must have subject matter jurisdiction over a case to act in that case. In re N.R.M., T.F.M., 165 N.C.App. 294, 598 S.E.2d 147 (2004). Here, S.D.A., R.G.A., and the Covingtons contend that because the Lincoln County Department of Social Services (DSS) found no evidence of abuse and neglect, Rutherford County DSS, which referred the matter to the Lincoln County DSS for investigation due to a conflict, lacked the power to invoke the jurisdiction of the trial court under sections 7B-302(c) and (d) of the North Carolina General Statutes. We agree and therefore vacate the trial court's orders.
The record reflects that in 2000, a Florida court removed the four minor children in this matter from the custody of their mother due to neglect and substance abuse. The mother eventually moved from Florida to Spindale, North Carolina to reside with her sister, and soon thereafter the Florida court allowed the children to move to North Carolina as well.
In North Carolina, the mother and the children began attending religious services at the Word of Faith Fellowship ("Word of Faith"), an evangelical Christian church. The children were enrolled in the Word of Faith Christian School, a private Christian day school. At the church and school, the children participated in religious practices, including "strong prayer," or "blasting," and "discipleship," or "isolation." Strong prayer refers to a strong demonstration of God and driving out of devils through screaming prayer. Discipleship refers to a practice where church members spend time alone, during which they may pray and listen to/watch tapes containing religious teachings. The record indicates that discipleship is also used for behavior modification and involves moving disruptive children from the regular classroom setting into another room where they may receive religious instruction.
The mother obtained employment with Kent Covington, a Word of Faith leader. Mr. Covington and his wife, Brooke, became involved with the mother and her children in February 2001.
In September 2002, the mother chose to leave Spindale because she felt that continuing as a member of Word of Faith was abusive and neglectful of the children. After meeting resistence at Word of Faith, the mother sought the assistance of the Rutherford County Sheriff's Department and was referred to Rutherford County DSS. Rutherford County DSS completed an assessment and recorded that the mother admitted to inappropriate discipline and a history of drug abuse that affected her ability to supervise and care for the children. The mother agreed voluntarily to place her children with the Covingtons until Rutherford County DSS deemed it appropriate to return the children. The mother then signed an agreement giving the Covingtons custody of the children. However, in December 2002, the mother appeared unannounced at the Covingtons' residence and demanded custody of the children. Her request was denied.
On 23 December 2002, the Covingtons filed an action in District Court, Rutherford County to confirm their status as legal custodians of the children. The court entered an ex parte order, confirmed by a temporary order of custody on 31 December 2002, granting the Covingtons custody.
On 23 December 2002 and 4 January 2003, Rutherford County DSS received reports alleging that the children were being abused and/or neglected through, inter alia, corporal *364 punishment and religious practices, particularly "blasting" and "isolation." Rutherford County DSS referred the reports to Lincoln County DSS for an unbiased investigation into the allegations. Lincoln County DSS investigated the reports and, in March 2003, upon request by Rutherford County DSS due to new allegations, conducted additional investigation into particular Word of Faith practices. On 3 April 2003, Lincoln County DSS closed its investigation and sent its decision by letter to Rutherford County DSS, stating: "[We] have completed our out-of-county investigation. The team decision was to unsubstantiate neglect. During the investigation there has been no evidence that [the four children] are neglected/abused by Brooke and Kent Covington or by any other member of Word of Faith."
Notwithstanding Lincoln County DSS's unsubstantiation of the abuse and neglect allegations, on 16 May 2003, Rutherford County DSS filed four petitions alleging that the minor children were abused and neglected from "June 2000 through present" because, inter alia, "[b]y returning her children to [Word of Faith's] influence ... and surrendering custody to the Covingtons, the mother knowingly and willfully exposed her children to continued improper discipline and neglect." The petitions contained detailed allegations of "blasting" and "isolation."
By order filed 9 July 2003, the Covingtons were allowed to intervene as parties, the trial court finding "it is in the best interests of said minor children that [the Covingtons] should be subject to any court order entered in this case, and that [the Covingtons] are necessary parties to this action...." On 21 August 2003, the trial court concluded that the children were abused and neglected and entered four separate orders on 7 October 2003 adjudicating abuse and neglect, ordering the removal of the children from the Covingtons' custody, and placing them in Rutherford County DSS custody. The Covingtons appeal from these orders.
The dispositive issue on appeal is whether the trial court lacked subject matter jurisdiction over this matter because Rutherford County DSS failed to follow its statutorily imposed duties prior to filing the petitions.[3] The issue of subject matter jurisdiction may be raised at any time, and may be raised for the first time on appeal. In re J.B., 164 N.C.App. 394, 396, 595 S.E.2d 794, 795 (2004); Yates for McCombs v. N.C. Dep't of Human Res., 98 N.C.App. 402, 404, 390 S.E.2d 761, 762 (1990). Here, the issue of subject matter jurisdiction was brought to this Court's attention by counsel for two of the children and the Covingtons. However, "a court has inherent power to inquire into, and determine, whether it has jurisdiction and to dismiss an action ex mero motu when subject matter jurisdiction is lacking.'" In re N.R.M., T.F.M., 165 N.C.App. at 297, 598 S.E.2d at 149 (quoting Reece v. Forga, 138 N.C.App. 703, 704, 531 S.E.2d 881, 882, disc. review denied, 352 N.C. 676, 545 S.E.2d 428 (2000)).
District courts have exclusive jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent. N.C. Gen.Stat. § 7B-200 (2003). However, "a trial court's general jurisdiction over the type of proceeding or over the parties does not confer jurisdiction over the specific action." In re McKinney, 158 N.C.App. at 447, 581 S.E.2d at 797 (citation omitted). "`Thus, before a court may act there must be some appropriate application invoking the judicial power of the court with respect to the matter in question.'" Id. at 444, 581 S.E.2d at 795 (quoting In re Transp. *365 of Juveniles, 102 N.C.App. 806, 808, 403 S.E.2d 557, 558 (1991)).
North Carolina General Statutes section 7B-302(a) mandates that when a department of social services receives a report of abuse or neglect, "the director of the department of social services shall make a prompt and thorough investigation. . . ." N.C. Gen.Stat. § 7B-302(a)(2003). A referral to another county is permissible "[w]hen in the professional judgment of the county director the agency would be perceived as having a conflict of interest. . . ." 10A N.C.A.C. 70A.0103(b).[4] If the investigation indicates abuse or neglect, North Carolina General Statutes section 7B-302 provides two possible avenues through which the director of the department may invoke the jurisdiction of the court. If abuse or neglect is indicated by the investigation, but immediate removal does not appear necessary, the director must immediately provide or arrange for protective services. N.C. Gen.Stat. § 7B-302(c) (2003). If the parent or custodian refuses the protective services, then the department may invoke the court's jurisdiction for the protection of the child(ren). Id. However, if immediate removal seems necessary, then the director shall sign a complaint alleging the applicable facts to invoke the jurisdiction of the court. N.C. Gen.Stat. § 7B-302(d) (2003). Under this statutory scheme, the two avenues for invoking the court's jurisdiction are available only when an investigation indicates that abuse or neglect has occurred.
The statute is silent on DSS's appropriate course of action if the investigation does not indicate abuse or neglect, and it may be inferred that no further steps are to be taken. This inference is supported by the North Carolina Administrative Code pertaining to DSS investigations, which states: "When a thorough investigation does not reveal abuse, neglect or dependency, the county director, shall ... communicate to [any parent or caretaker who was alleged to have abused or neglected the child or children, any parent or other individual with whom the child or children resided at the time the county director initiated the investigation, and any agency with whom the court has vested legal custody] that the Department shall no longer be involved with the child or children on a non-voluntary basis."[5] 10A N.C.A.C. 70A.0108. Moreover, in In re Stumbo, 357 N.C. 279, 286-89, 582 S.E.2d 255, 258-61 (2003), an informative if not analogous case, our Supreme Court held a trial court's order must fail where a report did not legally constitute a report of abuse or neglect sufficient to invoke the investigatory power of DSS under North Carolina General Statutes section 7B-302(a). The Court held: "Having concluded that the investigative mandate of N.C.G.S. § 7B-302 was not properly invoked, it follows that the trial court's order based upon the petition filed pursuant to N.C.G.S. § 7B-303 charging the parents with interference with or obstruction of an investigation must fail." Id. at 289, 582 S.E.2d at 261.
Here two reports of abuse and neglect were received by Rutherford County DSS; these reports contained allegations of, inter alia, "blasting" and "isolation." The two reports triggered Rutherford County DSS's statutory duty to conduct an investigation. N.C. Gen.Stat. § 7B-302(a). Due to concern regarding a conflict, Rutherford County DSS referred the reports to Lincoln County DSS. 10A N.C.A.C. 70A.0103(b). Following an investigation and follow-up investigation at the request of Rutherford County DSS, Lincoln County DSS decided to unsubstantiate the allegations, stating their investigation revealed no evidence the children were neglected or abused by the Covingtons or any other member of Word of *366 Faith and noting "no concerns for the [] children."
In its response to the motions to dismiss,[6] Rutherford County DSS stated "the investigation by the Rutherford County Department of Social Services' [sic] involved reports of abuse and neglect by the Respondent mother and not the Intervenor-Appellants." Rutherford County DSS failed, however, to cite anything in the record indicating that additional reports were made or additional investigations conducted. Nothing in the record indicates any additional reports of abuse and/or neglect or a new investigation by Rutherford County DSS indicating that abuse and/or neglect occurred.[7] Indeed the record supports the conclusion that no further reports or investigations occurred: A 19 September 2003 guardian ad litem report stated that Rutherford County DSS "later filed the Petitions regarding the minor children despite Lincoln County's failure to substantiate[;]" in contrast to the lengthy testimony by Lincoln County DSS investigators, no Rutherford County DSS investigators testified at the hearings; and a Lincoln County DSS investigator testified that "To my knowledge, the two reports that we received ... those two reports were made on these children, and to my knowledge, there was not any other reports [sic] made on these children." Moreover, Rutherford County DSS's contention that the abuse and neglect alleged in the petitions involved reports of abuse and neglect by the mother and not the Covingtons conflicts with the central allegation in the petitions that the mother abused and neglected the children by leaving them in the care of the Covingtons at Word of Faith, where they were subjected to harmful practices.[8]
Rutherford County DSS thus lacked the power to invoke the jurisdiction of the court under North Carolina General Statutes sections 7B-302(c) or (d) because the investigation did not indicate that abuse or neglect had occurred. Consequently, non-voluntary involvement should have ceased with regard to the 23 December 2002 and 4 January 2003 reports of abuse and neglect following Lincoln County DSS's unsubstantiation. Because the proper procedure under North Carolina General Statutes section 7B-302 was not followed to invoke the jurisdiction of the court, the trial court lacked subject matter jurisdiction in the underlying cases.
Accordingly, we vacate the orders and remand the four underlying cases to the trial court for dismissal.
Vacated and remanded.
Judges CALABRIA and JACKSON concur.
NOTES
[1] The only writing filed by the Rutherford County Department of Social Services was a response to S.D.A., R.G.A., and Intervenors' motions to dismiss.
[2] No brief was filed by the mother of the minor children.
[3] "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it." Haker-Volkening v. Haker, 143 N.C.App. 688, 693, 547 S.E.2d 127, 130 (citing 1 Restatement (Second) of Judgments § 11, at 108 (1982)), disc. review denied, 354 N.C. 217, 554 S.E.2d 338 (2001). "Jurisdiction of the court over the subject matter of an action is the most critical aspect of the court's authority to act. Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question[, and] ... is conferred upon the courts by either the North Carolina Constitution or by statute." Harris v. Pembaur, 84 N.C.App. 666, 667, 353 S.E.2d 673, 675 (1987) (citing W. Shuford, N.C. Civil Practice and Procedure § 12-6 (1981)).

In re N.R.M., T.F.M., 165 N.C.App. at 297; 598 S.E.2d at 149 (quoting In re McKinney, 158 N.C.App. 441, 443, 581 S.E.2d 793, 795 (2003)).
[4] We note that the North Carolina Division of Social Services Family Services Manual also permits referral to a sister county when a conflict of interest exists. Though the manual states that when an investigation is referred, the sister county is "solely responsible for the case decision," it also states that the counties should seek assistance in resolving any disagreements about the decision. North Carolina Division of Social Services Family Services Manual § 1410(V)(A)(7).
[5] This is further substantiated by the North Carolina Division of Social Services Family Services Manual, which states: "If the case decision is to unsubstantiate, a determination should be made as to what agency services or outside resources, if any, would be helpful. These services can be offered and referrals suggested, but the family may refuse." North Carolina Division of Social Services Family Services Manual § 1408(III)(C)(II)(b).
[6] We note that, in violation of Rule 37 of the Rules of Appellate Procedure, Rutherford County DSS's response to the motions to dismiss was filed on 22 July 2004, more than ten days after the motions to dismiss were filed on 6 May 2004 and 8 July 2004.
[7] The only suggestion of additional investigation, but not of additional reports of abuse or neglect, was an assertion by the mother's counsel that "it's my understanding that Rutherford County continued the investigation."
[8] We also note that the trial court, in its order deeming the Covingtons necessary parties to the action, found that:

Petitioner alleges that these said minor children are abused juveniles, in that Respondent mother ... voluntarily returned physical possession of the children to [the Covingtons], and later she gave [the Covingtons] the permanent care, custody and control of said minor children, and that [the Covingtons] (by implication) have the said minor children involved in the harmful practices of the Word of Faith Fellowship Church, and that Respondent mother has willfully exposed these said minor children to "continued additional abuse" by allowing cruel and grossly inappropriate devices or procedures to modify behavior to be used upon said minor juveniles by returning said minor children to [the Covingtons].