An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-971

Filed 6 May 2026

Davidson County, No. 24CVS001859-280

HOLLYE R. ROBINSON, Petitioner,

v.

DAVIDSON COUNTY, a North Carolina body politic and Corporate; DAVIDSON COUNTY BOARD OF ADJUSTMENT, an Agency of Davidson County; RODNEY GIBSON and AMBER GIBSON, Respondents.

Appeal by Petitioner from an order entered 4 April 2025 by Judge Alyson Adams Grine in Davidson County Superior Court. Heard in the North Carolina Court of Appeals on 11 March 2026.

> *Smith Law Group, PLLC, by Tristan McGuire, Matthew L. Spencer, and Steven D. Smith, for the petitioner-appellant.*

> *Davidson County Attorneys Office, by Assistant Davidson County Attorney J. Andrew Howe, for the respondents-appellees Davidson County and Davidson County Board of Adjustment.*

> *Barnes, Grimes, Bunce & Fraley, PLLC, by Shawn L. Fraley, for the respondents-appellees Gibsons.*

*Per Curiam.*

Hollye R. Robinson ("Petitioner") appeals from an order dismissing her Petition

for Writ of Certiorari for lack of standing pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure. After a thorough examination of the record, we affirm the trial court's order.

## I.    Factual and Procedural Background

Rodney and Amber Gibson ("Respondents") own property on High Rock Lake in Davidson County, North Carolina. In 2022, Respondents extended the width of their driveway from fourteen feet to eighteen feet and began construction on a carport that was expected to cover a portion of the driveway at eighteen feet wide by twenty-four feet tall. Petitioner lives next door to Respondents on High Rock Lake and was upset about the new carport being constructed near her property line.

Davidson County Planning and Zoning Department received a complaint that construction of the carport was ongoing without necessary permits or variance. In early 2023, Josh Tussey ("Tussey"), a zoning officer with Davidson County went to the home. In evaluating the construction, he found the carport did not meet the setback requirements of at least five feet from the property line, as it was only three feet from the property line at its closest point. He informed Respondents of the options for continuing the construction. He noted they would need a variance for the two feet the structure encroached on the side yard property line, as well as a construction permit. He also informed Respondents they had thirty days to respond to the notice of violation but as long as they were working towards corrective action,

which included applying for the variance, the county policy was to withhold enforcement action.

On 17 January 2023, less than a week later, Respondents applied for the variance. A stay on enforcement was put into place by the zoning office, and Respondents were free to continue construction at their own risk. Respondents resumed construction to utilize the wood that had been delivered so that the building materials would not be damaged by weather.

On 16 March 2023, the Davidson County Board of Adjustment ("the Board") held its first hearing regarding Respondents' variance application. The Board heard testimony from Rodney Gibson, Tussey, Petitioner, Petitioner's attorney Steven Smith, and William Ciccolello, a professional land surveyor hired by Petitioner. The issues requiring variance for Respondents' carport were noted, including the fact that a front yard variance may be necessary in addition to the side yard variance. In addition, reciprocal concerns were raised by Respondents as to whether Petitioner's carport and deck were within zoning regulation. Board members noted some uncertainty, based on the testimony, as to exactly how large the variance needed to be, whether additional variances were necessary, and whether any of the relevant construction was grandfathered in. The Board continued the matter to allow the parties to acquire accurate information and to amend applications if necessary.

On 13 April 2023, the Board held a second hearing on Respondents' zoning application. Rodney Gibson, Tussey, Petitioner, Petitioner's attorney, and county planning director, Scott Leonard, all testified.

Tussey noted that the issue of the front yard setback had been evaluated, and neighboring property owners had been noticed by the county of the zoning issues in both the front and side yards. He also noted the driveway was a non-issue as no setback or variance was required. However, a two-foot six-inch side yard and nineteen-foot four-inch front yard variance to setback regulations was required for the carport. Tussey testified there are a number of structures in the same area that are close to the front property lines and that if there were any safety concerns the zoning office would have informed the Board of such, but no concerns were reported.

Respondents amended their application to include variances for both the front and side yards. In their application, Respondents included a comparative market analysis ("CMA"); however, Petitioner objected to the use of the CMA because evidence was not offered for it and the person who prepared it did not testify.

Scott Leonard testified that in his opinion the structure is necessary to protect personal property and there are no practical relocation options for such a structure. He testified he believed the variance would be justified.

To approve the application for variance the Board was required to find that the applicants met all five necessary standards for the variance by a supermajority vote of four out of five board members. With only four voting members present at the

meeting, all four members would have had to vote unanimously for the required supermajority to be met. After discussion, the Board unanimously voted to "approve" findings that (1) there are practical difficulties to the subject property, (2) such hardship is more than a mere inconvenience, (3) the variance is in harmony with the zoning ordinance and its general intent and purpose, and (4) granting the variance will result in substantial justice being done. However, on the fifth finding of "no substantial interference with the rights of others," the vote was three in favor to one opposed and the supermajority was not met. Therefore, the application for variance failed and the variance was denied.

The Board issued its order denying the application on 18 May 2023 stating that Respondents "failed to produce competent, material and substantial evidence" that the variance would not substantially interfere with or cause injury to the rights of others.

On 8 February 2024, Respondents submitted a new application for variance with additional information from a certified appraiser, Gerry Crowder of Hylton, Crowder, and Associates. The new application was scheduled to be heard by the Board on 21 March 2024. Because Petitioner filed a motion to dismiss the application and attended the meeting with counsel, Respondents requested a continuance to hire their own counsel. The Board unanimously approved the continuance request.

On 20 June 2024, the Board heard Respondents' new application for variance. Both Petitioner and Respondents were present and represented by counsel.

Petitioner argued the two applications were identical apart from the letters from Gerry Crowder and, therefore, barred by *res judicata.* Petitioner contended Respondents' proper recourse was to file an appeal in Superior Court rather than to refile the same application. In contrast, Respondents argued that a material change in circumstances warranted a new application and hearing and provided the letter was a material change because it was "competent, material and substantial evidence" that the variance would not substantially interfere with or cause injury to the rights of others, which had been absent in their initial application. The Board voted four to one to deny Petitioner's motion to dismiss and to consider Respondents' new application. The Board heard from Rodney Gibson, Assistant Director Lee Crook, and attorneys for Respondents and Petitioner. At the conclusion of the hearing, the Board voted unanimously to allow the variance for Respondents' carport.

On 18 July 2024, the Board issued orders denying Petitioner's motion to dismiss and granting Respondents' new application for variance.

On 22 August 2024, Petitioner filed a Petition for Writ of Certiorari with the Superior Court of Davidson County alleging (1) Respondents' application was barred by *res judicata* and lack of subject matter jurisdiction, (2) lack of substantial, material and competent evidence, and (3) arbitrary or capricious decision by the Board. The Davidson County Clerk of Superior Court issued a Writ of Certiorari.

On 15 January 2025, Respondents filed a Response to Petition for Writ of Certiorari, which included notice that they would be raising the issue of standing at

the hearing.  A Notice of Hearing accompanied the response requesting the trial court to conduct a hearing "regarding a Petition for Writ of Certiorari."  An Amended Notice of Hearing containing the same language was filed on 10 February 2025.

The matter was heard in Superior Court on 17 March 2025.  On 4 April 2025, the trial court entered an Order Dismissing Petition finding Petitioner lacked standing under N.C. Gen. Stat. § 160D-1402(c) in that, the petition contains a bare allegation that Petitioner "is a person who will suffer special damages as the result of the decision of the Board of Adjustment," which does not confer standing, a necessary prerequisite to the Court's proper exercise of subject matter jurisdiction. On 2 May 2025, Petitioner timely appealed to this Court.

## II.    Analysis

Petitioner raises three issues on appeal, contending the trial court erred by dismissing the Writ of Certiorari for lack of standing because (1) it was improper for the trial court to hear Respondents' Motion to Dismiss during the Writ of Certiorari hearing; (2) Petitioner sufficiently established the existence of special damages to have standing; and (3) *res judicata* should apply to the new application for variance. After careful review of the record, we affirm the trial court's order.

### A. Motion to Dismiss for Lack of Standing

"[A] court has inherent power to inquire into, and determine, whether it has jurisdiction and to dismiss an action *ex mero motu* when subject matter jurisdiction is lacking." *In re S.D.A.*, 170 N.C.App. 354, 358, 612 S.E.2d 362, 364 (2005)

(quotations and citation omitted). "Standing is required to confer subject matter jurisdiction," *Thomas v. Oxendine*, 280 N.C. App. 526, 530, 867 S.E.2d 728, 733 (2021), and "is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Fitzgerald v. Fortner*, 296 N.C. App. 338, 346, 910 S.E.2d 263, 268 (2024) (quoting *Smith v. Forsyth County Bd. of Adjust.*, 186 N.C. App. 651, 653, 652 S.E.2d 355, 357 (2007)). N.C. Gen. Stat. §160D-1402 governs appeals in the nature of certiorari for local planning and development regulation. The statute clearly states,

> (c) Standing.--*A petition may be filed under this section only by a petitioner who has standing to challenge the decision being appealed.* The following persons have standing to file a petition under this section:
>
> (1) Any person possessing any of the following criteria:
>
> a. An ownership interest in the property that is the subject of the decision being appealed, a leasehold interest in the property that is the subject of the decision being appealed, or an interest created by easement, restriction, or covenant in the property that is the subject of the decision being appealed.
>
> b. An option or contract to purchase the property that is the subject of the decision being appealed.
>
> c. An applicant before the decision-making board whose decision is being appealed.
>
> (2) *Any other person who will suffer special damages as the result of the decision being appealed.*
>
> (3) An incorporated or unincorporated association to which owners or lessees of property in a designated area belong by virtue of their owning or leasing property in that area,

or an association otherwise organized to protect and foster the interest of the particular neighborhood or local area, so long as at least one of the members of the association would have standing as an individual to challenge the decision being appealed, and the association was not created in response to the particular development or issue that is the subject of the appeal.

(4) A local government whose decision-making board has made a decision that the governing board believes improperly grants a variance from or is otherwise inconsistent with the proper interpretation of a development regulation adopted by the governing board.

N.C. Gen. Stat. § 160D-1402 (c) (emphasis added). Additionally, regarding a

respondent's burden to raise standing the governing statute states,

(f) Response to the Petition.--The respondent may, but need not, file a response to the petition, except that, if the respondent contends for the first time that any petitioner lacks standing to bring the appeal, that contention must be set forth in a response served on all petitioners at least 30 days prior to the hearing on the petition. If it is not served within that time period, the matter may be continued to allow the petitioners time to respond.

N.C. Gen. Stat. § 160D-1402 (f).

In the case *sub judice,* Respondents filed a Response to Petition for Writ of

Certiorari on 15 January 2025 which included notice they would be raising the issue

of standing. The certificate of service filed 16 January 2025 verified that the

response, including the clear notification that standing would be raised, was served

on Petitioner and the Board on 15 January 2025. The hearing was held two months

later on 17 March 2025. Therefore, Respondents gave Petitioner more than the

statutorily required thirty days of notice to comply with N.C. Gen. Stat. § 160D-1402(f). Although the trial court appeared confused at the hearing as to a calendaring error that may have occurred, there is no question that all parties, including Petitioner, were provided notice that standing would be addressed on the petition for writ of certiorari.

As Respondents followed the statutory requirements pursuant to N.C. Gen. Stat. § 160D-1402(f), the issue of standing was properly before the trial court.

**B. Standing**

We now consider whether Petitioner had standing to pursue the writ. "Because standing is a question of law, we review the issue de novo." *Smith*, 186 N.C. App. at 653, 652 S.E.2d at 357. "When reviewing a matter *de novo*, this Court 'considers the matter anew and freely substitutes its own judgment for that of the lower courts." *Town of Midland v. Harrell*, 385 N.C. 365, 370, 892 S.E.2d 845, 849 (2023) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316 (2003)).

"Subject matter jurisdiction is a court's power to hear a specific type of action, and is conferred upon the courts by either the North Carolina Constitution or by statute." *Bullins v. Riddle*, __N.C. App. __, __, 925 S.E.2d 250, 254 (2025) (quoting *Chavez v. Wadlington*, 261 N.C. App. 541, 544, 821 S.E.2d 289, 292 (2018)). As noted *supra,* the circumstances by which a person has standing to challenge a zoning decision are delineated in N.C. Gen. Stat. § 160D-1402(c). Since Petitioner did not have any property rights to Respondents' property and is not a homeowner's

association or local government, the only way she could acquire standing is to meet the requirement set forth under N.C. Gen. Stat. § 160D-1402(c)(2), namely, to "suffer special damages as the result of the decision being appealed." N.C. Gen. Stat. § 160D-1402(c)(2).

Our Court has held, "a neighboring property owner affected by a zoning change must 'suffer special damages distinct from those [ ] to the public at large' to have standing to challenge the decision from which the change resulted." *Violette v. Town of Cornelius*, 283 N.C. App. 565, 569, 874 S.E.2d 217, 221 (2022) (quoting *Mangum v. Raleigh Bd. of Adjust.*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008)). Additionally, "general diminution of property values in the area does not confer standing on a neighboring owner to challenge a zoning decision, and the neighbor's opinion of the diminution in value of the property the neighbor owns is not competent evidence to establish the neighbor's standing to challenge the decision" *Violette*, 283 N.C. App. at 570, 874 S.E.2d at 221 (internal citation omitted).

It is clear that Petitioner merely stating she believes property values will be impacted is not competent evidence to establish standing. There must be more. Petitioner has not met that burden here.

During the March 2023 and April 2023 hearings, Petitioner only testified to the events that transpired during the building process and that she has "an issue with Mr. Gibson's structure being close to the property line." Her attorney argued against the use of the CMA as evidence of property values but did not provide any

evidence or testimony that there was damage to Plaintiff or her property.

During the June 2024 board hearing Petitioner did not testify and the only evidence submitted by Petitioner was a survey outlining the property lines. Petitioner's attorney argued *res judicata* and a lack of changed circumstances. He also objected to the new letter submitted by Respondents, but his arguments all centered around Respondents' failures to follow the rules and did not explain how their carport would cause any special damage to Petitioner.

In Petitioner's Petition for Writ of Certiorari, she made the conclusory statement that "she is a person who will suffer special damages as a result of the decision by the Board of Adjustment," but provided nothing more to support her statement. Petitioner's attorney was given the opportunity by the trial court during the petition hearing to argue special damages but merely stated,

> Your Honor, again when it's got the special damages here, I don't know that in our original Complaint . . . it sets out citizen or resident petition resides. "The petitioner has standing to bring this petition pursuant to the statute, and she is a person who will suffer special damages as the result of the decision by the Board of Adjustment." I don't know, but by attaching then the record and bringing it forward, that would specify what had been testified to by her previously. But I think that's all we have to put out, is the specialization of . . . she's going to get special damages, not break every special damage down to have pre-approved it here.

We disagree. Petitioner had the burden of putting forth some form of evidence that special damages, unique to her rather than the public at large, had impacted her or

her property, but she failed to put forth anything. We affirm the trial court's conclusion that Petitioner did not have standing under N.C. Gen. Stat. § 160D-1402(c), and the trial court correctly dismissed the action.

### C. Petitioner's Brief

We note many concerns with Petitioner's brief that raise the question of whether this brief was generated, at least in part, by artificial intelligence. Most notably, Sections C-1 and C-2 concerning the Motion to Dismiss the Appellant's brief contain "quotes" from two separate cases, but the language from those "quotations" does not appear in either of this Court's opinions to which the brief accredits them nor to any other case this panel could locate. We do not quote them here out of concern that the hallucinatory language will be inadvertently used by others. Also, the brief contains multiple statements supported by general citations as if the brief's author is using their own language when in fact all the language belongs to our Supreme Court and should be credited as such using quotation marks.

We take this opportunity to remind appellate counsel of the obligation to comply with the Rules of Appellate Procedure and the Rules of this Court. While we recognize that artificial intelligence can be an extremely helpful tool in assisting with legal research and drafting legal memorandums, counsel is responsible for the ultimate content of their work. Failure to follow the rules is sanctionable.

### Conclusion

For the reason set forth above, we conclude the trial court appropriately

considered standing as a necessary element of subject matter jurisdiction prior to addressing the merits of Petitioner's petition. We affirm the trial court's conclusion that Petitioner lacked standing under N.C. Gen. Stat. § 160D-1402(c) as she failed to provide any support for special damages, and we affirm the trial court's dismissal of the action for lack of subject matter jurisdiction.

AFFIRMED.

Report per Rule 30(e).

Panel consisting of Judges STROUD, ARROWOOD, and WOOD.